**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 27, 2019
Decided March 21, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-1548

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:17CR63-001 |
| JASON L. ANDERSON, *Defendant-Appellant*. | Robert L. Miller, Jr., *Judge*. |

**O R D E R**

Jason Anderson pleaded guilty to possessing a firearm as a felon. See 18 U.S.C. § 922(g)(1). The district court determined that Anderson qualified as an Armed Career Criminal based on three prior cocaine-dealing convictions, and so it imposed the minimum sentence of 15 years' imprisonment. See *id.* § 924(e)(1). Anderson offers three reasons why he should not have been designated an armed career criminal. First, two of his three convictions occurred close in time and therefore (he says) they count as only one predicate offense under ACCA. Second, he postulates that the statute underlying those two convictions is broader than ACCA's definition of a "serious drug offense," and so neither one is a predicate offense. Third, he contends that because none of three

convictions was proven to a jury, none may count as a predicate offense. These arguments do not persuade us, and so we affirm the district court's judgment.

**I**

The procedural history of this case is straightforward. While Anderson, a felon, was detained on drug charges, police recovered guns at his home. He later pleaded guilty to illegal firearm possession under 18 U.S.C. § 922(g)(1). The government sought an enhanced sentence under ACCA based on three previous convictions that, it argued, were "serious drug offense[s]" that Anderson committed "on occasions different from one another." 18 U.S.C. § 924(e)(1). One conviction was for possession with intent to deliver cocaine under Illinois law. See 720 ILCS 570/401(a)(2)(A) (2004). The second and third were for dealing more than three grams of cocaine in violation of IND. CODE § 35-48-4-1(b)(1) (1998). This appeal concerns those last two convictions.

Anderson conceded that his convictions were serious drug offenses under ACCA, but he contended that the two Indiana convictions were just one predicate offense because they had not *necessarily* occurred on separate occasions, see 18 U.S.C. § 924(e)(1). The operative indictment stated that in 2000 Anderson committed an Indiana felony "on or about" September 22 by dealing cocaine, and that he committed another Indiana felony "on or about" September 21, also by dealing cocaine. The sales were made to the same buyer. Anderson urged that the indictment did not foreclose the possibility that the sales were made on the same occasion. (Anderson also argued that the government should have charged his previous convictions in his indictment and proven them to a jury, but he conceded that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), forecloses this argument at our level.)

The district court ruled that Anderson's Indiana convictions arose on separate occasions, and thus each was a predicate offense for purposes of ACCA's sentencing enhancement. The Indiana state prosecutors' decision to charge Anderson with these two felonies, the court reasoned, would have been "pointless[]" if both counts had arisen from the same transaction. That is because under Indiana's merger-offense doctrine, the state court could not have sentenced Anderson separately for each count if both arose from the same events. The district court accordingly sentenced Anderson to 15 years' imprisonment, the statutory minimum mandated by ACCA. See 18 U.S.C. § 924(e)(1).

## II

On appeal, Anderson continues to argue that he does not have the necessary three predicate offenses for ACCA. He presents three reasons in support of this point: (1) his two Indiana offenses should count as one predicate offense because they did not occur on separate occasions; (2) Indiana's cocaine-dealing statute criminalizes more conduct than ACCA's definition of a "serious drug offense" does (a new argument on appeal); and (3) *Almendarez-Torres* was wrongly decided.

We begin with Anderson's most serious point: whether the conduct underlying his two Indiana convictions occurred on separate occasions. This is a question of federal law, and so our review is *de novo*. *United States v. Elliott*, 703 F.3d 378, 381 (7th Cir. 2012). In evaluating this argument, we may consult only the documents approved by *Shepard v. United States*, 544 U.S. 13, 26 (2005). These are the "conclusive records made or used in adjudicating guilt," such as "charging documents, plea agreements, [and] findings of fact resulting from a bench trial." *Elliott*, 703 F.3d at 382 (internal quotations omitted). The burden is on the government to prove that the offenses occurred on separate occasions. *Kirkland v. United States*, 687 F.3d 878, 889 (7th Cir. 2012). If the *Shepard* documents are "equivocal as to whether the offenses occurred on the same occasion, the ACCA does not apply." *Id.*

Whether the crimes were simultaneous or separate depends on whether Anderson had the chance to "terminate his wrongdoing." *Elliott*, 703 F.3d at 383. This, in turn, depends upon the people involved and the nature, timing, and location of the crimes. *Id.* In *United States v. Cardenas*, 217 F.3d 491 (7th Cir. 2000), for instance, we found that two drug sales to the same buyer on the same day, just 45 minutes apart, and on the same block, were separate events and thus were distinct criminal episodes, because the seller had the chance to refrain from the second sale. *Id.* at 492. In so holding, we followed the rule announced in *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994), which held that separate criminal incidents exist if, "within a short period of time, … the perpetrator had the opportunity to cease and desist from his criminal actions." *Id.* at 1020. Crimes that overlap temporally or circumstances in which there is no way to change course would be different. Thus, in *United States v. Willoughby*, 653 F.3d 738 (8th Cir. 2011), the Eighth Circuit held that sales of drugs just seconds apart to a single buyer were properly viewed as one continuous course of conduct. *Id.* at 744–45.

Anderson urges us to hold that his case falls within the narrow exception recognized by *Willoughby*, but the record is against him. At the plea hearing in the state court, the following colloquy took place:

> THE COURT: Mr. Anderson, the Charging Information indicates that on September 21st, of the year 2000, you were in possession of cocaine—no, you sold cocaine; is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: That also on the 22nd day of September—22nd day of September of the year 2000, you sold cocaine and it weighted [*sic*] more than 3 grams, correct?
>
> THE DEFENDANT: Yes, sir.

Based on that guilty plea, the state court imposed concurrent sentences of 10 years on Count I (relating to the September 21 sale) and 20 years on Count II (relating to the September 22 sale). Without this record, we might be more willing to entertain Anderson's supposition that his September 21 sale occurred at 11:59 pm, and his September 22 sale occurred at 12:01 am, just two minutes later. But there is nothing but wishful thinking to support that scenario. Surely, if the sales had been two minutes apart, the defendant would have said something to the state judge. Moreover, as the government has argued here, Indiana law permits only one substantive drug conviction "when a single transaction is involved between the same principals at the same time and place." *Duncan v. State*, 412 N.E.2d 770, 775 (Ind. 1980). The state judge therefore could not lawfully have imposed separate sentences on the two counts if they represented only one transaction. On this record, we therefore follow the lead of the state sentencing court and conclude that Anderson was convicted and sentenced for two separate acts, not one, and thus has the necessary three convictions for ACCA.

In the alternative, Anderson argues that his two Indiana convictions are not "serious drug offenses" under ACCA. Anderson did not raise this argument in the district court, and so we review it for plain error. We will reverse only if Anderson's substantial rights were affected. See FED. R. CRIM. P. 52(b); *United States v. Lynn*, 851 F.3d 786, 793 (7th Cir. 2017). The Indiana statute provides:

> (a) A person who:
>> (1) knowingly or intentionally
>>> (A) manufactures;
>>> (B) finances the manufacture of;
>>> (C) delivers; or
>>> (D) finances the delivery of …

or
(2) possesses, with intent to:
    (A) manufacture;
    (B) finance the manufacture of;
    (C) deliver; or
    (D) finance the delivery of;
cocaine, a narcotic drug, … [c]ommits dealing in cocaine or a narcotic drug, a Class B felony ….

(b) The offense is a Class A felony if:
    (1) the amount of the drug involved weighs three … grams or more ….

IND. CODE § 35-48-4-1 (1998).

To determine whether a prior conviction counts as a serious drug offense under ACCA, courts apply a "categorical" approach that focuses exclusively on the elements of the crime of conviction and not on the facts underlying the conviction. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *Taylor v. United States*, 495 U.S. 575, 600–02 (1990); *United States v. Franklin*, 895 F.3d 954, 957–58 (7th Cir. 2018). If the elements of the crime of conviction are broader than the elements of the generic version of the offense—that is, if the crime of conviction criminalizes more behavior—then ACCA does not apply. See *Mathis*, 136 S. Ct. at 2248.

Some statutes identify multiple crimes under one heading or section. The Supreme Court has described these statutes as "divisible." *Descamps v. United States*, 570 U.S. 254, 261–62 (2013). If a statute is divisible, courts must determine which crime a defendant committed and whether it supports an ACCA enhancement. *Descamps*, 570 U.S. at 261–63; *Franklin*, 895 F.3d at 958. To do this, courts use what has been termed the "modified categorical approach." *Descamps*, 570 U.S. at 261–62. Under this approach, courts may "look beyond the statutory elements" and review the *Shepard* documents (*i.e.* indictment, plea agreement, and transcripts related to the plea) to see if the defendant was convicted of a version of the crime that falls within ACCA's definition of a serious drug offense. *Id*. at 261–63; *Shephard*, 544 U.S. at 26. If so, then the conviction supports an ACCA enhancement. See *Mathis*, 136 S. Ct. at 2249.

Anderson's argument that his conviction under § 35-48-4-1 is not a serious drug offense has two parts. He argues first that § 35-48-4-1(a), the subsection that sets forth different ways of dealing a narcotic drug, is indivisible, and second, that an indivisible

§ 35-48-4-1(a) would be overbroad—*i.e.* it would encompass more conduct than a generic serious drug offense. He is wrong in both respects.

A statute is divisible if it lists different crimes that the "prosecution must prove to sustain a conviction"; it is indivisible if it lists alternative "means," defined as "various factual ways of committing some component of the offense," on which juries need not unanimously agree. *Mathis*, 136 S. Ct. at 2248–49 (internal quotations omitted). Whether the statute includes separate elements or separate means is a question of state law. See *Mathis*, 136 S. Ct. at 2256; *United States v. Edwards*, 836 F.3d 831, 833 (7th Cir. 2016). Indiana courts treat § 35-48-4-1(a) as divisible. For example, juries must unanimously convict the defendant of any one of the listed activities (*e.g.*, possession with intent to deliver) under the statute. See *Upshaw v. State*, 934 N.E.2d 178, 183 (Ind. Ct. App. 2010); *McKinley v. State*, 45 N.E.3d 25, 27 (Ind. Ct. App. 2015) (quoting jury instructions). This indicates that the statute contains multiple crimes. Moreover, in *Harper v. State*, 963 N.E.2d 653 (Ind. Ct. App. 2012), the court commented that this statute "provides the elements for the *crimes* of dealing in … a narcotic drug." *Id*. at 658 n.3. That observation supports a reading of § 35-48-4-1(a) as defining multiple offenses.

Because Indiana treats § 35-48-4-1(a) as containing multiple crimes, the statute is divisible. This conclusion is consistent with our decision in *Lopez v. Lynch*, 810 F.3d 484 (7th Cir. 2016), in which we assumed § 35-48-4-1(a) was divisible but did not conduct an in-depth analysis. *Id*. at 489. Thus, the modified categorical approach applies, and we look to the *Shepard* documents to determine which variant of the crime Anderson committed. *Descamps*, 570 U.S. at 262–63. The indictment and plea show that Anderson was charged with cocaine delivery, which fits squarely within the scope of 18 U.S.C. § 924(e)'s prohibition on "distributing." See *United States v. Meherg*, 714 F.3d 457, 459–60 (7th Cir. 2013). Because the statute is divisible, Anderson's crime is a serious drug offense under ACCA.

Anderson next contends that if § 35-48-4-1 is indivisible, then it encompasses more conduct than ACCA's "serious drug offense" definition. He relies on *Lopez*, in which we ruled that an Indiana statute that criminalizes *financing* illegal drug trade is broader than the relevant part of the Immigration and Nationality Act. 810 F.3d at 489. But ACCA's definition of a "serious drug offense" is broader than the one found in the Immigration and Nationalization Act. ACCA applies to crimes "*involving* manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). The INA refers only

to "illicit trafficking in a controlled substance." 8 U.S.C. § 1101(a)(43)(B). Anderson's argument fails because the word "involving" in the ACCA definition is broad enough to cover financing a drug operation. (Indiana courts define financing as "raising or providing funds" to manufacture or deliver drugs. See *Hyche v. State*, 934 N.E.2d 1176, 1179 (Ind. Ct. App. 2010) (internal quotations omitted)).

Federal courts interpret the word "involving" as having "expansive connotations." *United States v. King*, 325 F.3d 110, 113 (2d Cir. 2003). In *King,* the Second Circuit ruled that the word "must be construed as extending the focus of § 924(e) beyond" the listed offenses to "encompass[] … offenses that are related to or connected with such conduct." *Id*. Adopting this reasoning, other courts routinely have affirmed sentencing enhancements under ACCA based on convictions for attempt and conspiracy to manufacture, distribute or possess with the intent to distribute drugs. See *United States v. Coleman*, 700 F.3d 329, 339 (8th Cir. 2012) (attempt); *United States v. Williams*, 488 F.3d 1004, 1009 (D.C. Cir. 2007) (attempt); *United States v. McKenney*, 450 F.3d 39, 43–45 (1st Cir. 2006) (conspiracy); *United States v. Winbush*, 407 F.3d 703, 707–08 (5th Cir. 2005) (attempt); *King*, 325 F.3d at 114–15 (attempt). The Third Circuit also adopted an expansive definition of "involving" in *United States v. Gibbs*, 656 F.3d 180 (3d Cir. 2011). In that case, the court concluded that a Delaware conviction for wearing body armor while committing a felony "involve[d]" a serious drug offense where the underlying felony was manufacturing, distributing or possessing with the intent to distribute drugs. *Id*. at 184–85, 188.

We conclude that the term "serious drug offenses" as used in ACCA covers Indiana convictions for financing drug manufacturing or distribution. Financing the manufacture or delivery of a controlled substance "involves" prohibited drug dealing in the same way as do attempt, conspiracy and wearing body armor while dealing drugs. The only case from Indiana arguably suggesting that § 35-48-4-1 criminalizes more activity than ACCA is *Kibler v. State*, 904 N.E.2d 730, *1–4 (Ind. App. Ct. 2009) (unpublished). There a court upheld a conviction for "financing" the delivery of heroin under § 35-48-4-1(a) where the defendant had simply purchased the drugs. This case, however, is an outlier. *Cf. Hyche*, 934 N.E.2d at 1178–80 (holding that simple purchase is not "financing"). And at least one of our sister circuits has held that purchasing a controlled substance on behalf of another person falls within ACCA's definition of a serious drug offense. See *United States v. White*, 837 F.3d 1225, 1229–30 (11th Cir. 2016). *Kibler*—an unpublished, nonprecedential decision under state law, see IND. R. APP. P. 65(D)—does not persuade us that an indivisible § 35-48-4-1 criminalizes more behavior

than the generic crime. Our conclusion is reinforced by the fact that we are reviewing only for plain error.

Finally, Anderson argues—solely to preserve the issue for the Supreme Court's review—that the Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), calls for reconsideration of its ruling in *Almendarez-Torres* that previous convictions need not be included in an indictment. We have rejected similar arguments for the simple reason that "unless and until the Supreme Court overrules *Almendarez-Torres* or confines its holding solely to the fact of a prior conviction," we are bound by the Court's decision. *Elliott*, 703 F.3d at 383. Judges thus may make the findings that ACCA requires with respect to a defendant's prior convictions.

We AFFIRM the judgment of the district court.